## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SHERNAYE JOHNSON, as Next of Kin And Personal Representative of the ESTATE OF DEBRA JOHNSON<br>　　Plaintiff,<br><br>v.<br><br>WARDEN JOHN FITZ Individually<br><br><br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CaseNo.<br>**JURY DEMAND** |

### COMPLAINT FOR DAMAGES

**COMES NOW**, Plaintiff Shernaye Johnson, Daughter of the decedent Debra Johnson and Personal Representative of her Estate, by and through her undersigned counsel and files this his Complaint for damages bringing claims under 42 U.S.C. §§ 1983, 1988, the Constitution of the United States, premises liability and negligence / gross negligence under state law.

### PARTIES

1. **Plaintiff**. At all times material hereto, Plaintiff's decedent Debra Johnson was a resident of Lauderdale County. Johnson was a 38-year employee of the Tennessee Department of Corrections (TDOC). At the time of her death, however, Ms. Johnson was **off-duty and in her home**, which was located on site at West Tennessee State Penitentiary (WTSP), 480 Green Chapel Rd., Henning, TN. Plaintiff is Johnson's daughter and the Personal Representative of her Estate.

2. **Defendants**. At all times material hereto, Warden John Fitz was the lead supervisory official that was responsible for the operation and security at WTSP. On information and belief, Warden Fitz had the authority and power to change the classification of trusty inmates like Inmate Watson and take measures to ensure that Debra Johnson's home was safe and secure,

1

such as by providing for adequate video surveillance, or otherwise ensure his corrections officers were adequately trained to monitor inmates on work details. Warden Fitz is sued in his individual capacity.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over these claims brought under the Constitution of the United States pursuant to 42 U.S.C § 1983 by virtue of 28 U.S.C. §§ 1331 and 1343, and pendent claims under Tennessee common law pursuant to 28 U.S.C. § 1367.

4. Venue lies in the United States District Court for the Western District of Tennessee, because the constitutional violations and injury to the Plaintiff's decedent occurred in Lauderdale County, Tennessee. 28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

5. On the morning of August 7, 2019, Curtis Watson (Inmate Watson), a convicted felon with a violent history, sexually assaulted and murdered Plaintiff's decedent, Debra Johnson, a dedicated, 38-year TDOC employee, in her home located on the grounds of the West Tennessee State Penitentiary in Henning, TN. The Tennessee Department of Corrections (TDOC) operates WTSP and is responsible for the inmates and employees there, including Ms. Johnson who was off duty at the time. TDOC, through its correctional officers and employees at WTSP, including Defendant Warden John Fitz, knew of the threat that Inmate Watson posed in the months, weeks, and days leading up to his brutal assault when he murdered Ms. Johnson. TDOC also knew that WTSP was woefully understaffed and inmates were insufficiently monitored. On information and belief, TDOC and Warden Fitz created and willfully ignored an unreasonably dangerous situation as it developed with Watson and allowed Debra Johnson to suffer this foreseeable harm.

6. Inmate Watson was a "trusty" and a mechanic at WTSP and was allowed to roam

2

the grounds without sufficient supervision. According to news reports, sometime before 8:45 A.M. on August 7, 2019, Watson "disappeared" from his job post without notifying corrections officers of where he was going. Watson drove a golf cart to Debra Johnson's home, where he sexually assaulted her and strangled her with a telephone cord until she was dead. There were no security cameras pointed at Ms. Johnson's home. Watson stole a tractor and escaped the prison grounds. He was not declared missing until 10:30 A.M when the facility was placed on lockdown. Debra Johnson's body was found at approximately 11:30 A.M. after she failed to report for work. Watson was apprehended after a five-day manhunt.

7. Based on testimony at Watson's pre-trial hearing, corrections officers searched for Inmate Watson when he was found not to be present at his assigned duty station. ***Hours before Ms. Johnson's body was discovered***, this officer noted Watson's golf cart, partially hidden, near Debra Johnson's home. That officer knocked on the door but left the area after no one answered. This officer made no additional efforts to inquire into Ms. Johnson's safety, despite her car being there (indicating that she was home) and the presence of Inmate Watson's golf cart. On information and belief, had this officer acted reasonably and entered Ms. Johnson's home, she would have been found alive and given life-saving medical treatment. Further, on information and belief, Inmate Watson was seen by a fellow inmate "banging on the door" of Johnson's home around 8:30 A.M. on August 7, 2019. Had there been security cameras monitoring Ms. Johnson's front door, TDOC personnel likewise could have responded sooner, sparing her life.

8. TDOC officials have stated that this tragic event was unforeseeable, noting that

"the face of evil is sometimes hard to recognize."[1] In fact, the risk of harm and violence posed by Watson was apparent. Fitz among other officials recklessly placed Inmate Watson in a position of trust, with lax supervision, despite a history violence towards women and ignored warning signs that Watson was targeting Debra Johnson in a sexually aggressive manner. Furthermore, Ms. Johnson's death can be traced back to systemic issues and policies and/or customs put in place by Fitz and others, to wit—a change in hours/compensation structure leading to a mass exodus of corrections officers in 2015 which continued to affect staffing levels at WTSP in 2019, a culture which encouraged corrections officers to downplay sexual assault/harassment, inmate-on-inmate and inmate-on-officer violence, and other significant and widespread failings relating to security and oversight.

9. On information and belief, Inmate Watson was designated by Fitz or in the alternative somone who Fitz has supervisory authority a "minimum security" prisoner and allowed to work on the grounds with minimal supervision despite the fact that he had a violent offense history. In July 2012, Watson was arrested for the rape and assault of his wife; in the police report filed on the incident, detailed descriptions of events allege rape, as well as his wife being held captive and being struck in the head twice with an aluminum baseball bat. In 2013, Watson was convicted through a plea deal of especially aggravated kidnapping; he also had a prior conviction

---

[1] *See New Details Revealed in the Escape of Inmate Curtis Ray Watson*, WMC Action News 5 (Nov. 22, 2019), *available at* https://www.wmcactionnews5.com/2019/11/22/timeline-new-details-revealed-escapecurtis-ray-watson-murder-tdoc-administrator-debra-johnson/ (last accessed August 6, 2020).

for aggravated child abuse. Inmate Watson was assigned violent offender status when he entered prison. Somehow, this designation was downgraded and he became a trusty at WTSP.[2]

10. The week prior to her death, Debra Johnson stopped in at the shop where Watson worked. Inmate Watson told a fellow inmate, Zachary West, that Johnson "wanted to have sex with [him]." On information and belief, this comment was made within earshot of corrections officer(s) and/or was reported to the same. Despite this clear red flag, Watson was not questioned, evaluated by a mental health professional, and/or otherwise removed from his trusty duties.

11. On information and belief, Fitz and other WTSP acting under the control of Fitz officials knowingly assigned Watson to trusty status (and later allowed him to retain that status) despite knowledge that (1) he had a violent and sexually aggressive criminal history; (2) he would have access to female TDOC employees (such as Debra Johnson) and/or female inmates at WTSP's Women's Therapeutic Residential Center when they were alone; and (3) Watson had made comments suggesting he may target Ms. Johnson. On information and belief, Watson's comments and the fact that Ms. Johnson lived on site placed her in a position of "special danger" by the States' actions and inactions.

12. On information and belief, Debra Johnson suffered and died as a direct result of these affirmative actions by Fitz and others under the control of Fitz (and the State) which allowed Watson unfettered access to her home despite these warning signs, and by failing to adequately monitor her home in August 2019.[3] Johnson's death can also be traced back to other, earlier and

---

[2] Notably, sex offenders are not allowed to be afforded "trusty" status in municipal/county jails in the State of Tennessee. *See* Tenn. Code. Ann. § 41-51-104.

[3] The American Corrections Association (ACA) has issued a report indicating that WTSP policies relating to the "movement and placement" of Inmate Watson as a trusty were followed and were "good correctional practice." But as Tennessee State Representative Mike Stewart has stated,

5

more systemic actions by the State, namely, affirmative policies or customs which exacerbated understaffing issues and increased the risk that TDOC employees would be assaulted by WTSP inmates.

13. **Understaffing**. Beginning in mid-2015, TDOC officials reduced salaries and also implemented a new staffing schedule that required TDOC guards to work 171.1 hours during each 28-day period before being eligible for overtime pay. These new policies—coupled with growing concerns regarding guards' safety—resulted in a mass exodus of correctional officers from TDOC facilities, which were already understaffed. No facility felt this change more than WTSP, which as of 2017 had the highest vacancy rate in the State (20%, as compared to the state-wide vacancy rate of 10.7%). WTSP has never fully recovered from the impacts of these policies; as of August 2019, WTSP had 295 corrections officers, with 69 vacant positions (a 19% vacancy rate). WTSP thus was not equipped to adequately monitor its inmates, particularly trustees with violent histories such as Inmate Watson.

14. **False Reporting of Assault Data and Lack of Oversight.** TDOC has also come under fire in recent years for policies or customs which encouraged officials to write up or reclassify assaults as non-violent incidents such as "provocation" to keep violence statistics down.[4] On information and belief, TDOC actively chose to *downplay* inmate violence rather than address

---

"[t]here is no reason the public should believe an ACA inspection is anything more than a rubber stamp for business as usual."  TDOC in recent years gave $40,000 to the ACA. The ACA report concerning the policies that permitted Inmate Watson to be granted trusty status should not be considered a "true independent investigation."

[4] *See Controversial Prison Boss: 'I Wouldn't Change a Thing,'* NBC News (June 6, 2016), *available at* https://www.nbcnews.com/news/us-news/controversial-prison-boss-i-wouldn-t-change-thing-n588511 (last accessed August 6, 2020).

the underlying issues and *reduce* violence as would ensure the safety and security of inmates and corrections officers. A 2020 audit also found that TDOC leadership failed to provide oversight of correctional facilities which resulted in a failure to operate "safe and secure prisons."[5] Of note, the audit found that state-managed facilities like WTSP were operating at "minimal staffing levels," which impacted safety and security, and otherwise failed to provide accurate, complete, and timely investigations into allegations of sexual abuse and harassment. *Id*. On information and belief, this culture contributed to Ms. Johnson's assault and death because Inmate Watson's sexually charged comment targeting her was not appropriately investigated.

## CAUSES OF ACTION

### COUNT I
### STATE CREATED DANGER — 42 U.S.C. § 1983
### AND THE DUE PROCESS CLAUSE
### *Against Warden Fitz*

15. Plaintiff re-alleges paragraphs 1-15, inclusive.

16. Plaintiff's decedent Debra Johnson had a constitutional right under the Due Process Clause of the Fourteenth Amendment to personal security and bodily integrity and not to be subject to affirmative acts which placed her at an unreasonable risk of violence from others. This right was well-established at the time and was further known to these Defendants.

17. On information and belief, Warden Fitz, and others acting under the control of Fitz were aware of Watson's violent and sexually aggressive history, and nonetheless granted him and allowed him to retain trusty status; such officials were also aware that Watson made comments

---

[5] *See* TDOC Performance Audit Report, Tennessee Comptroller of the Treasury (Jan. 2020), *available at* https://ewscripps.brightspotcdn.com/3b/f5/d2a1a4114ca9888b607ac30a9d0b/embargoed-tdoc-audit2020.pdf (last accessed August 6, 2020).

7

suggesting that Debra Johnson could be a target of sexual violence. In addition, Fitz among others acting under his control and authority affirmatively implemented policies which created an unreasonably dangerous situation in which WTSP became woefully understaffed and unable to effectively monitor its inmates and keep Debra Johnson safe.

18. Warden Fitz' actions in assigning Inmate Watson as a "trusty" and the other actions that led

to understaffing and lack of oversight at WTSP served no compelling government interest, and in fact these actions were directly contrary to the public's interest in the operation of safe and secure prisons in the State of Tennessee.

19. Warden Fitz acted with reckless disregard and deliberate indifference to the very real risk that someone would be subject to violence at the hands of Inmate Watson and/or another trusty inmate with a violent offense history. In addition to being aware that Watson would have access to Johnson's residence, Fitz was aware that Watson's trusty status would increase the likelihood he would have access to female inmates at the Women's Therapeutic Residential Center, which was also located on the site of WTSP.

20. These constitutional violations were the direct and proximate cause of Plaintiff's decedent's and Plaintiff's injuries and damages. Debra Johnson suffered and died, and Plaintiff lost the love and support of her mother.

**COUNT II**
**PREMISES LIABILITY — TENNESSEE COMMON LAW**
*Against Warden Fitz*

21. Plaintiff re-alleges paragraphs 1-21, inclusive

8

22.     As the entity and the individual responsible for the maintenance and operation of WTSP, Warden Fitz owed a duty of care to Debra Johnson, who lived on-site. Ms. Johnson trusted Fitz and or in the alternative those under his control to take reasonable measures to ensure that she was safe in her own home when she was off duty. This duty of care, most notably the duty to provide security and adequate monitoring, was heightened given that Ms. Johnson lived on site of a corrections facility that housed violent offenders such as Inmate Watson.

23.     Warden Fitz breached this duty of care by failing to put in place sufficient measures to ensure Ms. Johnson's home was secure, and appropriately monitored, to avoid incidents in which violent inmates like Watson would gain unlawful access to her home. On information and belief, Warden Fitz and TDOC officials also breached this duty of care by failing to adequately train its officers to monitor "trusty" inmates and appropriately and swiftly respond when such an inmate disappears from his duty station.

24.     Warden Fitz specifically breached this duty by allowing Inmate Watson, who had a violent and sexually aggressive history, to be placed in a position of trust, and also by ignoring warning signs that Watson was targeting Johnson for sexual assault. On information and belief, Watson was seen by a fellow inmate "banging on the door" of Ms. Johnson's home around 8:30 A.M. on August 7, 2019. Had there been security cameras monitoring Ms. Johnson's front door, corrections personnel could have responded, and she very likely would still be alive today. Just as inmate cells are monitored using a/v footage in part to prevent inmate-on-inmate assault a **reasonable** owner/operator of a premises known to house violent offenders would have ensured that the home of Ms. Johnson (essentially a tenant) was appropriately monitored.

25.     Because of Defendants breach of the duty of care owed to Debra Johnson, an invitee / tenant on the premises of WTSP, Ms. Johnson suffered and died.

## COUNT III
## NEGLIGENCE / GROSS NEGLIGENCE — TENNESEE COMMON LAW
### *Against Warden Fitz*

26. Plaintiff re-alleges paragraphs 1-26, inclusive.

27. Warden Fitz and those acting under his control and authority owed a duty of care to Debra Johnson to operate WTSP in a manner that was reasonably safe and secure, providing proper monitoring of its inmates with known violent and/or sexually aggressive histories, train its corrections officers to adequately monitor such inmates, and provide for sufficient staffing at WTSP to ensure the prison was safe and secure. The Defendant Corrections Officers also owed a duty of care to Ms. Johnson to appropriately monitor the "trusty" inmates in their charge, including Inmate Watson.

28. Warden Fitz and others acted unreasonably, or otherwise with a conscious or reckless disregard to the foreseeable and substantial risk that Inmate Watson and/or violent inmates like him would abuse the position of "trusty" and assault female staff or inmates, or otherwise that understaffing, insufficient training, and lack of oversight at WTSP would lead to instances of inmate-on-officer assault. The Unknown Corrections Officers likewise breached a duty owed to Ms. Johnson by failing to appropriately monitor Inmate Watson, respond swiftly when he went missing, and/or enter Ms. Johnson's home when Inmate Watson's golf cart was found outside. The foreseeable result Defendants' actions and inactions was Ms. Johnson, or other female employees/inmates at WTSP would suffer grievous injuries or death at the hands of violent inmates recklessly placed into positions of trust.

29. Warden Fitzs' actions and policies were directly responsible for the assault and murder of Debra Johnson. Similarly, the Unknown Corrections Officers' failure to appropriately respond when Inmate Watson went missing caused Ms. Johnson to be found when it was too late.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff, sues and demands judgment from the Defendant's, and respectfully requests an order from this Court awarding damages and compensation for the following:

1. An award of actual, consequential and incidental damages in such amounts as are sufficient to compensate in full the Plaintiff for the losses and damages actually incurred as a result of the Defendants' wrongdoing;

2. An award of punitive damages to be determined by the Jury as fair and reasonable in an amount adequate to punish the Defendants and serve as an example to deter similar conduct in the future;

3. An award of the Plaintiff's costs and expenses incurred in connection with this action, including attorneys' fees, expert witness fees and all other costs herein;

4. An award of pre-judgment and post-judgment interest as the Court deems appropriate;

5. Attorneys' fees, to the fullest extent allowable by the statutes generally referenced herein and/or the common law applicable to this case, including but not limited to the extent permitted under 42 U.S.C. § 1988; and

6. Statutory and discretionary cost(s);

7. All such further relief, both general and specific, to which he may be entitled;

8. Plaintiff request that a Jury be impaneled to hear this cause

**RESPECTFULLY SUBMITTED**, this the **29ᵗʰ d**ay of **JSeptemberune**, **2024**.

**THE BOWLIN LAW FIRM P.C.**

By: _____ *for The Firm*
Troy L. Bowlin, II No. 025893
*Attorney for Plaintiff*
800 South Gay St. Suite 2131
Knoxville, Tennessee 37929
Telephone: 865.245.2011

11